TOREY JOSEPH FAVAROTE (SBN: 198521)
GLEASON & FAVAROTE, LLP
4014 Long Beach Blvd., Suite 300
Long Beach, California 90807
Telephone: (213) 452-0510
Facsimile: (213) 452-0514
tfavarote@gleasonfavarote.com

Attorneys for Defendants CUSHMAN & WAKEFIELD OF CALIFORNIA, INC. and CUSHMAN & WAKEFIELD U.S., INC.

**UNTIED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTHONY PORTS, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CUSHMAN & WAKEFIELD OF CALIFORNIA, INC., a California corporation; CUSHMAN & WAKEFIELD U.S., INC., a Missouri corporation; and DOES 1-20, inclusive,<br><br>Defendants. | Case No.: 3:23-cv-02218<br><br>**NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. SECTIONS 1332(d), 1441 AND 1446** |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# TABLE OF CONTENTS


I. DESCRIPTION OF THE ACTION. ..... 1

II. TIMELINESS OF REMOVAL. ..... 2

III. DIVERSITY JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT. ..... 2

IV. DIVERSE CITIZENSHIP OF THE PARTIES. ..... 3

V. CLASS SIZE. ..... 4

VI. AMOUNT IN CONTROVERSY ..... 5

A. Plaintiff's Alleged Unpaid Meal Period And Rest Break Premiums Under Labor Code Sections 226.7 And 512 Provide At Least $4,617,008.80 To The Amount In Controversy. ..... 7

B. Plaintiff's Claim For Overtime Wages Under Labor Code Sections 510 And 1194 Provide At Least $6,925,513.20 To The Amount In Controversy. ..... 9

C. Plaintiff's Claim For Minimum Wages Under Labor Code Sections 1194 and 1194.2 Provide At Least $4,617,008.80 To The Amount In Controversy. ..... 10

D. Plaintiff's Alleged Waiting Time Penalties Provide At Least $5,434,249.25 To The Amount In Controversy. ..... 11

VII. NO BASIS FOR DECLINING JURISDICTION EXISTS. ..... 12

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

Arias v. Residence Inn by Marriott,
936 F.3d 920 (9th Cir. 2019) ....................passim

Biag v. King George - J&J Worldwide Servs. LLC,
2020 WL 4201192 (S.D. Cal. July 22, 2020) ....................10

Boeing Co.,
47 F.3d 1404 (5th Cir. 1995) ....................7

Briggs v. Merck Sharp & Dohme,
796 F.3d 1038 (9th Cir. 2015) ....................4

Burns v. Windsor Ins. Co.,
31 F.3d 1092 (11th Cir. 1994) ....................6, 7

Bush v. Cheaptickets, Inc.,
425 F.3d 683 (9th Cir. 2005) ....................4

Dawson v. Hitco Carbon Composites, Inc.,
2016 WL 7235629 (C.D. Cal. Dec. 14, 2016) ....................8

Ehrman v. Cox Commc'ns, Inc.,
932 F.3d 1223 (9th Cir. 2019) ....................4

Elizarraz v. United Rentals, Inc.,
2019 WL 1553664 (C.D. Cal. Apr. 9, 2019) ....................8

Fritsch v. Swift Transportation Co. of Arizona, LLC,
899 F.3d 785 (9th Cir. 2018) ....................1, 9, 10

Gaus v. Miles, Inc.,
980 F.2d 564 (9th Cir. 1992) ....................7

Guglielmino v. McKee Foods Corp.,
506 F.3d 696 (9th Cir. 2007) ....................6

Hender v. Am. Directions Workforce LLC,
2020 WL 5959908 (E.D. Cal. Oct. 8, 2020) ....................9

Hernandez v. Nuco2 Mgmt., LLC,
2018 WL 933506 (E.D. Cal. Feb. 16, 2018) ....................5

Kantor v. Wellesley Galleries, Ltd.,
704 F.2d 1088 (9th Cir. 1983) ....................3

Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,
199 F.Supp.2d (C.D. Cal. 2002) ....................6, 7

LeBlanc v. Cleveland,
248 F.3d 95 (2d Cir. 2001) ....................3

Lewis v. Verizon Communications, Inc., 627 F.3d 395 (9th Cir. 2010) ..... 6
Luckett v. Delta Airlines, Inc., 171 F.3d 295 (5th Cir. 1999) ..... 6
Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8 (1st Cir. 1991) ..... 3
Newcombe v. Adolph Coors Co., 157 F.3d 686 (9th Cir. 1998) ..... 4
Sanchez v. Abbott, Lab'ys, 2021 WL 2679057 (E.D. Cal. June 30, 2021) ..... 10
Sanchez v. Monumental Life Ins. Co., 102 F.3d 398 (9th Cir. 1996) ..... 6
Serrano v. 180 Connect, Inc., 478 F.3d 1018 (9th Cir. 2007) ..... 3
Singer v. State Farm Mutual Auto Ins. Co., 116 F.3d 373 (9th Cir. 1997) ..... 6
State Farm Mut. Auto Ins. Co. v. Dyer, 19 F.3d 514 (10th Cir. 1994) ..... 3
Taylor v. United Rd. Servs., Inc., 313 F. Supp. 3d 1161 (E.D. Cal. 2018) ..... 3
White v. FCI USA, Inc., 319 F. 3d 672 (5th Cir. 2003) ..... 7

**Federal Statutes**

28 U.S.C. § 1332(a)(1) ..... 3
28 U.S.C. § 1332(c)(1) ..... 4
28 U.S.C. §§ 1332(d), 1441 AND 1446 ..... passim
28 U.S.C. § 1332(d)(2) ..... 3
28 U.S.C. §§ 1332(d)(2), 1332(d)(5), 1453(a) ..... 3
28 U.S.C. § 1332(d)(2)(A) ..... 4
28 U.S.C. § 1332(d)(3) and (4) ..... 12
28 U.S.C. § 1332(d)(5) ..... 3
28 U.S.C. § 1332(d)(6) ..... 5
28 U.S.C. § 1441(a) ..... 2, 4
28 U.S.C. § 1446 ..... 2
28 U.S.C. § 1446(b) ..... 2
28 U.S.C. § 1453(b) ..... 2
28 U.S.C.A. § 1332 ..... 4

**State Statutes**

Cal. Code Civ. Proc. § 338 .......... 11
Cal. Lab. Code § 203 .......... 11

**Federal Rules**

F.R.C.P Rule 6(a)(1) .......... 2

**TO THE CLERK OF THE ABOVE ENTITLED COURT, PLAINTIFF ANTHONY PORTS, AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that defendants Cushman & Wakefield U.S., Inc. (Hereinafter "C&W") and Cushman & Wakefield of California, Inc. (hereinafter "C&W of CA," collectively C&W and C&W of CA are "Defendants") hereby remove the below referenced action from San Francisco County Superior Court in the state of California to the United States District Court for the Northern District of California. Removal is based on 28 USC sections 1332(d) (the Class Action Fairness Act), 1441(b) and 1446, as there are more than 100 proposed class members, the parties are diverse, and the amount in controversy is more than $5,000,000 as it is at least $21,593,780.05[1] before including another 25% for attorney's fees as explained in detail below.[2]

## I. DESCRIPTION OF THE ACTION.

On March 30, 2023, plaintiff, Anthony Ports (hereinafter "Plaintiff"), on behalf of himself and all others similarly situated, filed a putative class action complaint against Defendants[3] in the Superior Court of California, County of San Francisco ("Superior Court"), Case No. CGC-23-605522, wherein he alleges the following causes of action: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Breaks; (5) Failure to Provide Accurate Itemized Wage Statements; (6) Failure to Indemnify Necessary Business Expenses; and (7) Violation of Business and Professions Code Section 17200 *et. seq*. (hereinafter the "Complaint"). The Complaint was served on Defendants on April 7, 2023. (Declaration of Torey

---

[1] $5,434,249.25 waiting time penalties + $4,617,008.80 meal period and rest break claims + $6,925,513.20 in overtime claims + $4,617,008.80 in minimum wage claims = $21,593,780.05.

[2] Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019); Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785, 796 (9th Cir. 2018).

[3] C&W was Plaintiff's employer not C&W of CA. (Sturm Decl. ¶ 2.)

Joseph Favarote "Favarote Decl." ¶ 2.)

Though it is not necessary under 28 U.S.C. § 1453(b), all Defendants agree to the removal.

Attached as **Exhibit B** to the Favarote Declaration are all other documents aside from the Complaint on file in this matter with the Superior Court of the state of California, County of San Francisco.

## II. TIMELINESS OF REMOVAL.

The Complaint was filed on March 30, 2023, and served on C&W on April 7, 2023. (See, Ex. A (Complaint Service of Process Transmittal and Summons). This Notice of Removal is therefore timely as the 30-day period after service would expire on May 7, 2023, and has been filed prior to that date. See, 28 U.S.C. Section 1446(b) and F.R.C.P Rule 6(a)(1).

## III. DIVERSITY JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT.

Removal jurisdiction is based on 28 U.S.C. section 1332(d), the Class Action Fairness Act of 2005 ("CAFA"). In relevant part, CAFA grants federal district courts original jurisdiction over civil class-action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs. CAFA authorizes removal of such actions in accordance with 28 U.S.C. section 1446. As set forth herein, this case meets all of CAFA's requirements for removal, and is timely and properly removed by the filing of this Notice of Removal.

This Court has jurisdiction over this case under CAFA, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) the primary defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class

members exceeds $5,000,000; and (4) there is diversity between at least one class member and at least one defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5), 1453(a); Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1021 (9th Cir. 2007) ("Once the prerequisites of § 1332(d)(5) are satisfied, CAFA vests federal courts with 'original' diversity jurisdiction over class actions if: (1) the aggregate amount in controversy exceeds $5,000,000, and (2) any class member is a citizen of a state different from any defendant."). Under CAFA, there is no presumption against removal. Taylor v. United Rd. Servs., Inc., 313 F. Supp. 3d 1161, 1168 (E.D. Cal. 2018).

## IV. DIVERSE CITIZENSHIP OF THE PARTIES.

CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state different from at least one defendant. 28 U.S.C. §§ 1332(d)(2).

For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088 (9th Cir. 1983); see also LeBlanc v. Cleveland, 248 F.3d 95, 100 (2d Cir. 2001) (citizenship determined at the time the lawsuit is filed); see also Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991). Residence is *prima facie* evidence of domicile. State Farm Mut. Auto Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994).

Plaintiff states in his Complaint that he is a California resident. (Favarote Decl., Ex. A, Complaint, ¶ 14.) For diversity purposes, a person is a "citizen" of the state in which he is domiciled. See Kantor v. Wellesly Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). Thus, Plaintiff is a citizen of the state of California. See 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled). Plaintiff seeks to represent current and former non-exempt employees of Defendants who were employed in the state of California during the putative class period. (Favarote Decl., Ex. A, Complaint, ¶ 20.)

C&W was at the time of the filing of the state court action and remains a corporation organized under the laws of the state of Missouri, with its principal place of business in the state of Illinois. (Declaration of Jessica Waller "Waller Dec.",

¶ 3.) A corporation is a citizen of its state of incorporation and wherever it has its principal place of business. 28 USC § 1332(c)(1). Accordingly, C&W is not a citizen of the state of California.

The citizenship of fictitiously-named "Doe" defendants is to be disregarded for the purposes of removal. 28 U.S.C. section 1441(a); Newcombe v. Adolph Coors Co., 157 F.3d 686, 690-691 (9th Cir. 1998).

Accordingly, because Plaintiff is a citizen of a state different from C&W, minimal diversity exists for purpose of establishing jurisdiction under traditional diversity principles and under CAFA. 28 U.S.C. Sections 1332(d)(2)(A); 1453(b); Bush v. Cheaptickets, Inc., 425 F.3d 683, 684 (9th Cir. 2005). Complete diversity is not necessary in a CAFA removal under 28 USC § 1332(d), so it is of no importance to this removal that C&W of CA is a California Corporation. Ehrman v. Cox Commc'ns, Inc., 932 F.3d 1223, 1226 (9th Cir. 2019) ("CAFA confers jurisdiction on federal district courts over class actions when, among other things, 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'")

## V. CLASS SIZE.

CAFA extends removal jurisdiction to civil actions in which the monetary relief claims of 100 or more persons are proposed to be tried jointly. Briggs v. Merck Sharp & Dohme, 796 F.3d 1038, 1047 (9th Cir. 2015). Removal under CAFA is proper when the number of members of all proposed plaintiff classes in the aggregate is greater than 100. 28 U.S.C.A. § 1332.

Plaintiff alleges in his Complaint that he seeks to represent a class of all non-exempt employees who worked for Defendants during the period 4 years prior to the filing of the Complaint, ostensibly March 30, 2019, to the present. (Favarote Decl., Ex. A, Complaint, ¶ 20.) Plaintiff concedes in his Complaint that his proposed class is "greater than 100 individuals." (Favarote Decl., Ex. A, Complaint, ¶ 23.) C&W's records show that the alleged class is comprised of at least 1,932 proposed class members in aggregate during the alleged class period of March 30, 2019, to the

present. (Declaration of Patty Strum "Strum Dec.", ¶ 3.) A declaration by a company officer with knowledge of the day-to-day operations is competent and sufficient evidence to prove the number of class members and amount in controversy with reasonable certainty. Hernandez v. Nuco2 Mgmt., LLC, 2018 WL 933506, at *5 (E.D. Cal. Feb. 16, 2018).

## VI. AMOUNT IN CONTROVERSY.

Pursuant to CAFA, the alleged amount in controversy in this class action exceeds, in the aggregate, $5,000,000. 28 U.S.C. § 1332(d)(6) (under CAFA, claims of individual class members aggregated to determine if the amount in controversy exceeds $5,000,000). The Complaint seeks to recover all allegedly unpaid straight time wages, all allegedly unpaid overtime wages; allegedly unpaid meal period and rest break premiums; reimbursement for allegedly unreimbursed necessary business expenses; allegedly unpaid wages at termination; derivative waiting time penalties; and itemized wage statement penalties. (Ex. A, Complaint, ¶¶ 2, 8.) In addition to alleging Labor Code violations, Plaintiff also seeks to recover under Business and Professions Code § 17200, which has a four-year statute of limitations pursuant to Section 17208. (Favarote Decl., Ex. A, Complaint, ¶¶ 59, 20.) As set forth below, the amount in controversy implicated by these class-wide allegations exceeds $5,000,000.

| **Plaintiff's Alleged Claims** | **Minimum Amount in Controversy Generated** |
|---|---|
| Waiting Time Penalties under Labor Code § 203 | $5,434,249.25 |
| Meal Period and Rest Break Premiums Under Labor Code §§ 226.7 And 512 | $4,617,008.80 |
| Overtime Wages Under Labor Code §§ 510, 1194, 204 And 1198 | $6,925,513.20 |
| Minimum Wages Under Labor Code §§ 204, 1194, 1194.2 And 1198 | $4,617,008.80 |
| **TOTAL**[4] | **$21,593,780.05** |

[4] Before attorneys' fees of an additional 25% which must be added to the amount in controversy. Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019)

"[W]here it is unclear or ambiguous from the face of a complaint whether the requisite amount in controversy is pled," the defendants only need to establish by a "preponderance of the evidence" that the alleged claims exceed the jurisdictional minimum. See Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007). Here, Plaintiff does not allege a total dollar amount in controversy in the Complaint. The amount in controversy is unclear from the face of the Complaint. Therefore, Defendants only need to establish by a preponderance of the evidence that the alleged claims exceed the jurisdictional minimum. See Guglielmino, 506 F.3d at 700-701; Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996); Singer v. State Farm Mutual Auto Ins. Co., 116 F.3d 373, 376 (9th Cir. 1997). Defendants estimate that the amount in controversy has been met based on the competent data outlined below.

While Defendants expressly deny the validity of Plaintiff's claims and any liability for the damages sought in his Complaint, for purposes of determining whether the minimum amount in controversy has been satisfied, the Court must look to the allegations in Plaintiff's Complaint and presume that Plaintiff will prevail on his claims. Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F.Supp.2d 1001 (C.D. Cal. 2002), citing Burns v. Windsor Ins. Co., 31 F.3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability."). Thus, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." Lewis v. Verizon Communications, Inc., 627 F.3d 395, 400 (9th Cir. 2010). Critically, "**[t]he amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover.**" Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019) (emphasis added).

When determining whether a plaintiff's complaint meets the jurisdictional threshold, the Court should consider the allegations in the Complaint and facts set forth in the Notice of Removal. See Luckett v. Delta Airlines, Inc., 171 F.3d 295,

298 (5th Cir. 1999) (finding that facts presented in notice of removal, combined with plaintiffs allegations, sufficient to support finding of jurisdiction); DeAguillar v. Boeing Co., 47 F.3d 1404, 1412 (5th Cir. 1995) (stating that "defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount"); accord Gaus v. Miles, Inc., 980 F.2d 564, 566-67 (9th Cir. 1992); White v. FCI USA, Inc., 319 F. 3d 672, 674 (5th Cir. 2003) (facially apparent from the lengthy list of damages, combined with a claim for attorneys' fees, that plaintiffs claim exceeded the jurisdictional threshold).

The requisite amount in controversy is established through an examination of the claims asserted by Plaintiff. The amount in controversy in this action far exceeds the $5,000,000.00 threshold, as the amount in controversy for Plaintiff's claims for minimum wages, overtime wages, meal period and rest breaks, and/or waiting time penalties are each individually over 4.5 million dollars before attorneys' fees, and when combined with the other alleged claims, exceeds $21,593,780.05.

**A. Plaintiff's Alleged Unpaid Meal Period And Rest Break Premiums Under Labor Code Sections 226.7 And 512 Provide At Least $4,617,008.80 To The Amount In Controversy.**

Plaintiff's class action Complaint seeks to recover premiums for allegedly unprovided meal periods and rest breaks under Labor Code sections 226.7 and 512. (Favarote Decl., Exh. A, Complaint ¶¶ 33.) For determining the amount in controversy, the Court must assume that Plaintiff will prevail on his claims. Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F.Supp.2d 1001 (C.D. Cal. 2002), citing Burns v. Windsor Ins. Co., 31 F.3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability.")

Plaintiff's Complaint alleges that Plaintiff and the proposed class members were "required to remain on duty at all times and did not leave [sic] sufficient time to take a fully compliant meal period," and were "caused to endure unprovided, untimely, shortened and/or interrupted meal periods." (Favarote Decl., Exh. A,

Complaint ¶ 33.) Plaintiff's Complaint makes the same allegations as to rest breaks. (Favarote Decl., Exh. A, Complaint ¶ 34.) Plaintiff's allegation that Defendants kept him and the class members "on duty at all times" would mean that the proposed class members never received a compliant meal period or rest breaks, and thus a violation rate of 100% would be appropriate. For the proposed class period of March 30, 2019, to the present there are at least 71,256 pay periods worked by the proposed class members. (Strum Dec., ¶ 5.)

However, only taking Plaintiff's allegations of alleged meal period and rest break violations at the rate of only 1 meal period and 1 rest break violation per two week pay period, the unpaid meal period and rest break premium claims are **worth a minimum** of $4,617,008.80. (71,256 pay periods × 2 violations [1 meal period and 1 rest break] × $32.40 average rate of pay.)

Defendants' calculations are far **below** what courts commonly accept as reasonable. "[I]t is entirely reasonable for Defendant to allege a 50% violation rate for missed meal periods and a 25% violation rate for missed rest periods" in connection with its Notice of Removal under CAFA. Elizarraz v. United Rentals, Inc., 2019 WL 1553664, at *3 (C.D. Cal. Apr. 9, 2019); see also Dawson v. Hitco Carbon Composites, Inc., 2016 WL 7235629, at *4 (C.D. Cal. Dec. 14, 2016) (holding a 50% violation rate is reasonable under CAFA.) If Defendants were to use these cases and the violation rates courts have found to be reasonable the alleged meal period and rest break violations would add at least $8,656,891.50 to the amount in controversy. (71,256 pay periods × 3.75 violations [2.5 meal period violations and 1.25 rest break violation[5]] × $32.40 average rate of pay.)

Using only the **minimum** violation rate of 1 meal period and 1 rest break violation per **two week pay period** the amount in controversy in this matter rises to $4,617,008.80. When 25% for attorneys' fees is added, as is required in the Ninth

[5] A 50% and 25% violation rate respectively per week.

Circuit, the amount in controversy is already more than $5,000,000.00. Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019) citing Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785, 796 (9th Cir. 2018) ("In Fritsch, we reaffirmed that '**a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met.**'") (Emphasis added.)

### B. Plaintiff's Claim For Overtime Wages Under Labor Code Sections 510 And 1194 Provide At Least $6,925,513.20 To The Amount In Controversy.

Plaintiff's class action Complaint also seeks to recover unpaid overtime wages and associated liquidated damages under Labor Code sections 510, and 1194. (Favarote Decl., Exh. A, Complaint ¶¶ 31-32.) Specifically, Plaintiff's Complaint alleges that Defendants would regularly require Plaintiff and the proposed class members to work off the clock, attend meetings and trainings off the clock, and would not pay all overtime worked and/or subtract time worked to eliminate overtime. (Id.) Plaintiff alleges that all of these actions resulted in both unpaid overtime and minimum wages.

Plaintiff alleges that he and the proposed class members are ostensibly owed overtime for every shift they worked because their time was not recorded properly and was tampered with. Courts have found similar allegations to support a claim of 1-2 hours of unpaid overtime a week. Hender v. Am. Directions Workforce LLC, 2020 WL 5959908, at *7 (E.D. Cal. Oct. 8, 2020) (Holding up to a violation rate of 20% to 40%, or one to two hours of overtime a week, is reasonable in connection with calculating the amount in controversy under CAFA.)

At a minimum, Plaintiff's alleged unpaid overtime claim adds at least $6,925,513.20 (71,256 pay periods × 2 hours of overtime per pay period at $48.60 [$32.40 average rate of pay × 1.5]) to the amount in controversy.

Using only the **minimum** violation rate of 2 hours of unpaid overtime per two week pay period, Plaintiff's overtime claim also far exceeds the amount in

controversy on its own, even before accounting for attorneys' fees.

### C. Plaintiff's Claim For Minimum Wages Under Labor Code Sections 1194 and 1194.2 Provide At Least $4,617,008.80 To The Amount In Controversy.

Plaintiff's class action Complaint also seeks to recover unpaid minimum wages and associated liquidated damages under Labor Code sections 1194 and 1194.2. (Favarote Decl., Exh. A, Complaint ¶¶ 31-32.) Specifically, Plaintiff's Complaint alleges that Defendants would regularly require Plaintiff and the proposed class members to work off the clock, attend meetings and trainings off the clock, and would not pay all overtime worked and/or subtract time to avoid paying wages for more than 8 hours in a day. (Id.) Plaintiff alleges that this resulted in **both** unpaid minimum and overtime wages. (Id.)

Plaintiff alleges that he and the proposed class members are ostensibly owed unpaid wages for every shift they worked because their time was not recorded properly and/or their timecards were altered. Courts in the Ninth Circuit have frequently held a violation rate between 20% and 60% to be reasonable when the plaintiff claims similar "pattern and practice" minimum wage violations. Sanchez v. Abbott Lab'ys, 2021 WL 2679057, at *4 (E.D. Cal. June 30, 2021); Biag v. King George - J&J Worldwide Servs. LLC, 2020 WL 4201192, at *7 (S.D. Cal. July 22, 2020).

Using only the **minimum** violation rate of 2 hours of unpaid wages per **two week pay period** the amount in controversy in this matter for this alleged claim is $4,617,008.80 (71,256 pay periods × 2 hour of wages per pay period at $32.40 average rate of pay). When 25% for attorneys' fees is added, as is required in the Ninth Circuit, the amount in controversy is already more than $5,000,000.00. Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019) citing Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785, 796 (9th Cir. 2018).

Regardless of whether it is Plaintiff's meal period and rest break claims, minimum wage claim, or overtime claim, all three independently meet the amount in

controversy before considering Plaintiff's other claims for allegedly inaccurate wage statements under Labor Code section 226 and Plaintiff's Labor Code section 2802 claims.

**D. Plaintiff's Alleged Waiting Time Penalties Provide At Least $5,434,249.25 To The Amount In Controversy.**

Plaintiff's Complaint also implicates a claim for unpaid wages at termination, alleging that "Defendant's [sic] consistently maintained and enforced against Defendants' nonexempt employees, among others, the following unlawful policies and practices… "(f) failure to pay all wages earned and owed upon separation from Defendants' employ" (Favarote Decl., Exh. A, Complaint ¶ 8.) Plaintiff's Complaint also makes the allegation that "during the statutory class period and continuing to the present, Defendants have had a consistent policy of failing to timely pay wages upon separation of employment" (Favarote Decl., Exh. A, Complaint ¶¶ 12, 36 and 37(e).)

Labor Code section 203 provides for the imposition of waiting time penalties where an employer fails to timely pay all wages due at termination. The maximum penalty for each former employee who was not paid all wages due upon departure is 30 days of wages. The statute of limitations for claims under Labor Code section 203 is three years. Cal. Lab. Code § 203; Cal. Code Civ. Proc. § 338. During the relevant time frame, March 30, 2020 (three years prior to the date the Complaint was filed) to the present, at least 732 employees left their employment with C&W over 30 days ago at an average rate of pay of $30.93 per hour. (Strum Dec., ¶ 4.) Using an eight-hour workday, multiplied by the average hourly rate for these former employees, multiplied by the total number of employees who left their employment with C&W during the relevant waiting time penalties period, multiplied by 30 days (the maximum number of days for which waiting time penalties can be imposed per former employee) or (8 hours per day × $30.93 per hour × 732 former employees × 30 days), the sum of the potential Labor Code section 203 penalties is at least $5,434,249.25 for calculating the amount in controversy. Even before adding

attorneys' fees, the waiting time penalties Plaintiff seeks alone more than exceed the amount in controversy.

## VII. NO BASIS FOR DECLINING JURISDICTION EXISTS.

There is no basis for this Court to decline jurisdiction. The CAFA permits a district court to decline to exercise its jurisdiction only in specified instances where a primary defendant is a citizen of the forum state. 28 U.S.C. § 1332(d)(3) and (4). Here, Plaintiff's actual employer C&W, the primary defendant in this matter is not a citizen of California. Plaintiff was never employed by any other defendant.

Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of such filing will be served on Plaintiff's counsel of record: Ronald W. Makarem and Daniel J. Bass of Makarem & Associates, APLC.

In addition, a copy of the Notice of Removal will be filed with the Clerk of the Court for the Superior Court of the County of San Francisco California.

WHEREFORE, having provided notice as is required by law, the above-titled action should be removed from the Superior Court for the County of San Francisco to this Court.

Dated: May 5, 2023

GLEASON & FAVAROTE, LLP
TOREY JOSEPH FAVAROTE

By: /s/ Torey Joseph Favarote
Torey Joseph Favarote

Attorneys for Defendants CUSHMAN & WAKEFIELD OF CALIFORNIA, INC. and CUSHMAN & WAKEFIELD U.S., INC.

**PROOF OF SERVICE**

I, Thomas Steinhart, declare:

I am and was at the time of the service mentioned in this declaration, employed in the County of Los Angeles, California. I am over the age of 18 years and not a party to the within action. My business address is Gleason & Favarote, LLP, 4014 Long Beach Blvd., Suite 300, Long Beach, CA 90807.

On May 5, 2023, I served a copy(ies) of the following document(s):

**NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. SECTIONS 1332(d), 1441 AND 1446**

on the parties to this action by placing them in a sealed envelope(s) addressed as follows:

| Attorney | Party(ies) Served | Method of Service |
|---|---|---|
| Ronald W. Makarem, Esq.<br>Daniel J. Bass, Esq.<br>MAKAREM & ASSOCIATES APLC<br>11601 Wilshire Boulevard, Suite 2440<br>Los Angeles, California 90025-1760<br>Phone: (310) 312-0299<br>Fax: (310) 312-0296<br>makarem@law-rm.com<br>bass@law-rm.com | Attorneys for Plaintiff ANTHONY PORTS | First Class Mail |

☒ [BY MAIL] I placed the sealed envelope(s) for collection and mailing by following the ordinary business practice of Gleason & Favarote, LLP, Long Beach, California. I am readily familiar with Gleason & Favarote, LLP's practice for collecting and processing of correspondence for mailing with the United States Postal Service, said practice being that, in the ordinary course of business, correspondence with postage fully prepaid is deposited with the United States Postal Service the same day as it is placed for collection.

☐ [BY CM/ECF SYSTEM] I caused the above-referenced document(s) to be sent by electronic transmission to the Clerk's Office using the CM/ECF System for filing which generated a Notice of Electronic Filing to the CM/ECF registrants in this case.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct, and that this declaration was executed on May 5, 2023, at Long Beach, California.

Thomas Steinhart